IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMPUCOM SYSTEMS, INC., | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civ. No. 09-173-SLR<br>) |
| GETRONICS FINANCE HOLDINGS<br>B.V. and GETRONICS N.V., | )<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM ORDER**

At Wilmington this 16th day of October, 2012, having reviewed the pending motion of defendant Getronics N.V. ("Getronics") to dismiss the amended complaint for lack of personal jurisdiction, as well as the papers submitted and oral argument held in connection therewith;

IT IS ORDERED that said motion (D.I 48)[1] is denied, for the reasons that follow:

1. **Background.** The dispute between the parties stems from the purchase in 2008 by plaintiff CompuCom Systems, Inc. ("CompuCom") of certain companies owned by subsidiaries of defendant Getronics N.V. ("Getronics"), a *Naamloze Vennootschap* organized under the laws of the Netherlands with its principal place of business in the Netherlands. (D.I. 40, ¶ 10) The signatories to the Purchase Agreement memorializing the above transaction included CompuCom; defendant Getronics Finance Holdings

---

[1]Getronics' motion to dismiss for failure to state a claim is addressed by separate opinion.

B.V. ("B.V. Holdings"), a *Besloten Vennootschap* organized under the laws of the Netherlands; Getronics US Operations, Inc. ("US Operations"), a Delaware corporation; and Getronics Holding (Mexico), S. de R.L. de C.V. ("SRL Holdings"), a *sociedad de responsabilidad limitada*.[2] (D.I. 52, ex. 1) Getronics argues that it should be dismissed from the lawsuit because of lack of personal jurisdiction.

2. **Standard of review.** When personal jurisdiction is challenged, the plaintiff bears the burden of identifying a basis for the court's jurisdiction over a non-resident defendant. *See URS Corp. v. Lebanese Co. for Dev. & Reconstruction of Beirut Central District S.A.L.*, 512 F. Supp. 2d 199, 216 (D. Del. 2007). Although courts generally engage in a minimum contacts analysis to determine whether they can exert personal jurisdiction over such a defendant,[3] when a party properly consents to personal jurisdiction by contract, such an analysis is not required. *See, e.g., Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983).

3. "In order to find that [a defendant] is bound by [a] forum selection clause, it is not necessary to find that [it] was a party to the [agreement]." *Capital Grp. Cos. v. Armour*, Civ. No. 422-N, 2004 WL 2521295, at *5 (Del. Ch. Nov. 3, 2004). Rather, a forum selection clause binds non-signatories where: (1) "the forum selection clause is

---

[2]The companies acquired through the transaction were Getronics Canada Inc., an Ontario corporation, the stock of which was owned by B.V. Holdings; ISC Bunker Ramo de Mexico, S.A. de C.V., a *sociedad anonima* organized under the laws of the United Mexican States, the stock of which was owned by B.V. Holdings and SRL Holdings; and Getronics USA Inc., a Delaware corporation, the stock of which was owned by US Operations.

[3]*See, e.g., Beldin Techs., Inc. v. LS Corp.*, Civ. No. 08-823, 2010 WL 3943598, at *4 (D. Del. Sept. 30, 2010).

2

valid;" (2) the non-signatory is a third-party beneficiary to the agreement or "closely related to the [agreement];" and (3) the claim against the non-signatory "arises from [its] standing relating to the [agreement]." *Hadley v. Shaffer*, Civ. No. 99-144, 2003 WL 21960406, at * 4 (D. Del. Aug. 12, 2003). Getronics "does not contend that the first and third elements are disputed factors;" instead, it asserts that CompuCom cannot satisfy the second element of the above analysis, because Getronics is neither a "third-party beneficiary" nor "closely related" to the Purchase Agreement. (D.I. 56 at 3)

4. **Analysis.** The Purchase Agreement at bar contains a broad forum selection clause, which provides that "[a]ny Claim against any Party to this Agreement arising out of or relating to this Agreement shall be brought in the Delaware Court of Chancery in New Castle County, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such action, the United States District Court for the District of Delaware." Further, "each of the Parties hereby submits to the exclusive jurisdiction of such courts for the purpose of any such Claim" and expressly waives any challenges to Delaware's being an inconvenient forum. (D.I. 2, ex. A at § 9.13) The parties also agreed that the Purchase Agreement would be governed by Delaware law. (*Id.* at § 9.8) As I understand the record, defendants do not dispute that the signatories to the Purchase Agreement are bound by the above provisions;[4] rather, they challenge the applicability of these provisions to Getronics, a non-signatory, non-resident

---

[4]And, indeed, forum selection clauses are "'presumptively valid' and should be 'specifically' enforced unless the resisting party 'could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud and overreaching.'" *Capital Grp.*, 2004 WL 2521295, at *3 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

3

defendant.

5. As acknowledged by CompuCom, § 9.15 of the Purchase Agreement is a no third-party beneficiary provision and, therefore, it has the burden of demonstrating that Getronics was "closely related" to the Purchase Agreement. A party can be "closely related" to an agreement if: (a) it receives a "direct benefit" from the agreement; or (b) it was "foreseeable" that it would be bound by the agreement. *Weygandt v. Weco, LLC*, Civ. No. 4056, 2009 WL 1351808, at *4 (Del. Ch. May 14, 2009).

6. CompuCom identifies three purported "direct benefits" that it claims Getronics received from the Purchase Agreement: (1) a minority equity interest in the combined CompuCom entity together with Board representation; (2) the assignment of intellectual property rights; and (3) receipt of all communications and notices relating to the Purchase Agreement which, according to CompuCom, has "significant value" to Getronics as it ensures that Getronics "can control the resolution of any issues arising under the Purchase Agreement." (D.I. 51 at 13)

    a. CompuCom relies on an undated press release for the assertion that Getronics will receive a minority equity interest in the new entity. (D.I. 52, ex. 18) Even at the motion to dismiss stage, without any mention of this "benefit" in the Purchase Agreement or other related documents, the exertion of personal jurisdiction on this basis is unwarranted.

    b. Likewise, the Intellectual Property Assignment Agreement ("IPAA") is not specifically mentioned in the Purchase Agreement and, at best, is only indirectly related to the transaction at issue. In this regard, one of the stated purposes of the IPAA is to "clarify ownership" of certain proprietary intellectual property "prior to the

4

separation of the Companies from the Parent Companies contemplated by the Purchase Agreement." (D.I. 52, ex. 19 at 1) Although the "Companies" identified in the IPAA are those same "Companies" identified in the Purchase Agreement (i.e., the companies that were acquired through the Purchase Agreement), the signatories to these two documents are different. (*Compare id.* at 2, signature pages, *with* D.I. 2, ex. A at 1, 4, signature pages) Moreover, the IPAA has its own forum selection clause which confers jurisdiction in the state and federal courts located in the Southern District of the State of New York. (*Id.* at 17) I conclude that, to the extent the IPAA confers a benefit on Getronics, it is not so directly related to the Purchase Agreement that the exertion of personal jurisdiction on this basis is justified.

        c. The notice provision found in the Purchase Agreement requires that "[a]ll notices, requests, demands, claims and other communications hereunder shall be in writing and shall be given" to Getronics on behalf of the sellers. (D.I. 2, ex. A, § 9.7) None of the selling signatories is listed as an additional recipient under the notice provision. Getronics argues that its "passive receipt" outside of Delaware of such communications is an insufficient benefit to justify the exercise of jurisdiction by this court. I disagree.

    7. I disagree because there has been nothing "passive" about the role that Getronics has played in this transaction and, indeed, I conclude that Getronics should have anticipated that it would be bound by the Delaware forum selection clause found in the Purchase Agreement. In this regard, it is evident from the documents of record that the transaction, characterized as a sale by "Parent" Getronics of its North American operations, was driven by financial information provided by "Parent" Getronics in a

5

format dictated by "Parent" Getronics, including the distribution of Getronics' confidential information. (D.I. 52, exs, 1-4, 22) Moreover, the C.E.O. of Getronics executed several documents related to the transaction, including the "Closing Certificate" (on behalf of B.V. Holdings), the "Intellectual Property License" (between CompuCom and Getronics Intellectual Property B.V.), the "Transitional Services Agreement" (between CompuCom, Getronics USA, Inc., Getronics Canada Inc., ISC Bunker Ramo de Mexico, Getronics Support B.V. and B.V. Holdings), the "Global Service Partner Agreement" (between Getronics Support B.V. and CompuCom), and the "U.S. Service Partner Agreement" (between Getronics Support B.V. and CompuCom). (*Id.* at exs. 13-17)

8. Most significantly, it was Getronics, rather than any of the Sellers, that participated in the purchase price adjustment arbitration provided for in § 2.3(b)((ii) of the Purchase Agreement. (D.I. 46, ex. A) I decline to allow Getronics to wield the Purchase Agreement as both a sword (defending the purchase price through arbitration despite its non-signatory status) and a shield (challenging the application of the forum selection clause because of its non-signatory status). While I recognize the well established principle that courts should disregard the corporate form only in exceptional cases, *see Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990), nevertheless, disregard of the corporate entity may be warranted "in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation . . . are involved." *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968).

9. In looking for some guidance on the matter, and especially in view of

Getronics' participation in the arbitration proceeding mandated by the Purchase Agreement, I found cases where courts have specifically recognized that the application of equitable estoppel is justified when a party takes inconsistent positions with respect to corporate formalities. For instance, in *Ishimaru v. Fung*, Civ. No. 929, 2005 WL 2899680 (Del. Ch. Oct. 26, 2005), the court reviewed a Joint Venture Agreement that "took care to distinguish Members from their affiliates and the Arbitration Clause addresse[d] Members only." *Id.* at *17. When a non-Member affiliate tried to compel a Member to arbitrate, the court found in its favor, explaining:

> One of the primary justifications for estopping a signatory from denying a non-signatory a right to arbitrate is that it is unfair for the signatory to have it both ways by attributing to a non-signatory the duties of a contract signatory for purposes of pressing claims but denying the non-signatory the right to invoke the arbitration clause.

*Id.* at *18. *See also Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981), where the court found that "it would be manifestly inequitable to permit Hughes to both claim that J.A. is liable to Hughes for its failure to perform the contractual duties described in the . . . agreement and at the same time deny that J.A. is a party to that agreement in order to avoid arbitration of claims clearly within the ambit of the arbitration clause." Likewise, in *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)), the court held that "a signatory . . . cannot 'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the

7

defendant is a non-signatory." Although, in this case, it is the non-signatory Getronics that wants it both ways, the court in *Ishimaru* made clear that "[t]he various legal and equitable principles (e.g., agency, veil piercing, equitable estoppel, assumption by conduct) that can be deployed to require a signatory to arbitrate with a non-signatory can also be used to require a non-signatory to arbitrate with a signatory." 2005 WL 2899680, at *18 n.47.

10. The facts of record no doubt highlight the tension between those principles honoring corporate formalities and the realities of international business transactions carried out through multiple related entities. Getronics argues in this regard that it could not have anticipated being haled into a Delaware court when it went to great lengths to avoid that consequence through the complex and sophisticated negotiations that led to the transaction at bar. And, perhaps, if Getronics had in fact been consistent in maintaining even a facade of separate corporate existence throughout the course of the transaction, I would decline to upset the stated intentions of the parties. However, having taken the tack of purposefully participating in the transaction and actively defending the purchase price through the mechanism provided for in the Purchase Agreement, Getronics must accept the consequences that accompany its conduct.

11. **Conclusion.** It is evident from the record that Getronics was the driving force behind the transaction at issue and actively participated in all facets of such. I conclude that, under the circumstances, the exercise of personal jurisdiction over Getronics is justified under §9.13 of the Purchase Agreement. More specifically, I find that Getronics is equitably estopped from arguing that it was not "closely related" to the Purchase Agreement, or that it did not foresee being bound by the forum selection

clause of the Purchase Agreement.

                                                                       _____
                                                                          United States District Judge